CONTINENTAL OIL & COTTON CO. v. STEELE. (No. 563.)

(Court of Civil Appeals of Texas. El Paso. April 27, 1916. On Rehearing, May 25, 1916.)

1. VENDOR AND PURCHASER ⬤⇒95(1)—EXTENSION—RIGHT TO RESCIND.

Land was sold, reserving a vendor's lien to secure notes, and the purchaser conveyed 6 acres to defendant for a recited cash consideration of $90, and thereafter conveyed to another all of the lots, except the 6 acres first conveyed, and the last purchaser assumed the notes and entered into an extension contract with the first vendor, by which the time of the payment of the notes was changed and the rate of interest increased, and thereafter such vendor transferred the notes to plaintiff's transferror, and the second purchaser conveyed all except the 6 acres to another defendant. *Held*, that the extension of payment did not destroy the vendor's right to rescind the executory contract for the sale of the 6 acres.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 158; Dec. Dig. ⬤⇒ 95(1).]

2. APPEAL AND ERROR ⬤⇒750(7)—JUDGMENT —ASSIGNMENT OF ERROR.

In a suit with counts in trespass to try title and for the enforcement of a vendor's lien, where the assignment was directed only to the vendor's right to rescind, the judgment, granting a rescission, rather than a foreclosure, could not be reversed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3074; Dec. Dig. ⬤⇒750 (7).]

Error from District Court, Jones County; John B. Thomas, Judge.

Suit by J. J. Steele against the Continental Oil & Cotton Company and others, with count in the form of trespass to try title and a count for the foreclosure of a ven-

dor's lien. Judgment against the Continental Oil & Cotton Company, and it brings error. Affirmed.

Hardwicke & Chambers, of Abilene, for plaintiff in error. Walter S. Pope, of Anson, and Speer & Brown, of Ft. Worth, for defendant in error.

WALTHALL, J. Defendant in error filed his petition, consisting of two counts, against W. B. and G. W. Ferrell, J. A. White, J. L. Tuckness, Bert Driver, A. J. Hill, and plaintiff in error. The first count is in form of trespass to try title to recover lot No. 30 of Berry & Coggin subdivision, containing 150 acres, it being alleged that 6 acres of same was standing. in the name of plaintiff in error and the balance of the tract was standing in the name of said two Ferrells, and alleging entry by Tuckness, Hill, and plaintiffs in error on the 6-acre tract and that the other defendants entered upon the balance of the lot No. 30. The second count alleged that in 1905 Berry & Coggin sold lot No. 30 to Tuckness, reserving the vendor's lien to secure seven notes for $157.50 each, three other notes of like amount having been also given and paid; that Tuckness conveyed the 6 acres to plaintiff in error for a recited cash consideration of $90; that thereafter Tuckness conveyed to White all of lot No. 30 except the 6 acres conveyed to plaintiff in error, White assuming the seven notes; that thereafter White, "the then owner of lot No. 30," entered into an extension contract with Berry & Coggin by which the time of the payment of said seven notes was changed and the rate of interest increased. The petition then declares upon the extension agreement; that after such extension agreement Berry & Coggin transferred said seven notes to J. B. Wilson, "together with the respective liens securing same"; that defendant in error became the owner of said seven notes and the lien, securing them from Wilson; that White conveyed all of the land except the said 6 acres to the two Ferrells; that Hill was a tenant on the 6 acres, and Driver was asserting some claim under the Ferrells.

Hill disclaimed. Plaintiff dismissed as to White, Driver, and Tuckness. Plaintiff prayed for his debt, interest on notes at the rate they bore until the making of the extension agreement, and the increased rate of interest thereafter, attorney's fees, etc., and for a foreclosure of the lien expressed in the notes on all of lot 30, including the 6 acres in controversy. Plaintiff in error pleaded not guilty, disclaimed as to all the land except as to the 6 acres, denied specifically each paragraph except such facts as were admitted, alleged that the deed to it to the 6 acres from Tuckness was for a cash consideration of $90, with covenants of warranty, with no reference to the said notes of Tuckness to Berry & Coggin, alleged the registration of its deed and that White, in his deed from Tuckness to the 144 acres, specially assumed the payment of the Tuckness seven notes to Berry & Coggin. Plaintiff in error pleaded the extension agreement set out in defendant in error's petition, changing the time of payment of the notes for an increased rate of interest, etc., and Wilson's knowledge, actual and constructive, of all the facts, and that by reason of the facts pleaded the said 6 acres has been released from the said notes, but that, in the event the 6 acres had not been released, the 144 acres should be first sold, etc.

Defendant in error, by supplemental petition, after certain exceptions and admissions, prayed judgment for the title and possession, and writ of restitution as to the 6 acres. Trial was had without a jury. After reciting the dismissal as to White, Tuckness, and Driver, judgment by default was rendered against Hill for the possession of the 150 acres, judgment by default against the two Ferrells for the 144 acres of lot 30, and that defendant in error recover all title and possession of plaintiff in error of the 6 acres.

Plaintiff in error presents one assignment of error being its motion for new trial. Omitting the formal parts, we copy the one and only ground in the motion, which reads as follows:

"The judgment of the court is contrary to law in so far as it affects the said six acres in controversy, because the undisputed facts show that plaintiff's vendor's lien had been waived on the 6 acres and that plaintiff had no lien thereon, and because the undisputed facts show that the superior title originally vested in Berry & Coggin, in so far as the 6 acres are concerned, was lost by reason of a change and substitution of the vendor's lien obligation. And by reason of the conveyance to this defendant of the 6 acres of land in controversy, the subsequent transaction between the parties waived the vendor's lien as against the 6 acres in controversy, and thereby no superior title remained in Berry & Coggin, or their assigns."

Plaintiff in error, under this assignment, presents 10 propositions. The notes were unpaid and plaintiff in error made no offer to pay them, or any portion of them. Defendant in error owned the seven unpaid notes at the time of filing his suit and at the trial, and had also secured from Berry & Coggin the superior title to the 6 acres of land in controversy. The contention of plaintiff in error is that the extension of the date of the payments of the notes waives or destroys the vendor's lien and his right to rescind the contract of sale.

The extension contract referred to in the assignment is as follows:

"The State of Texas, County of Taylor.

"Whereas, by deed dated December 9, 1905, recorded in the deed records of Jones county, in Book 32, p. 246, George S. Berry and T. J. Coggin, did convey to J. L. Tuckness the following real estate situated in Jones county, Texas: All of lot No. 30, containing 150 acres, as shown by map of the Berry & Coggin subdivision of the Robinson pasture, said map recorded in Book 14, page 242 of the deed records of Jones county; and whereas, said deed retains a vendor's lien in favor of George S.

Berry and T. J. Coggin to secure the payment of ten notes of even date with said deed, each for the sum of $157.50, executed by J. L. Tuckness to Geo. L. Berry and T. J. Coggin, said notes maturing on or before December 1st, 1907, to 1916, inclusive, respectively; and whereas, the property now belongs to J. A. White; and whereas, the said land, together with the various other lands comprising the Robinson pasture, was and is subject to a vendor's lien in favor of D. H. Trent, said vendor's lien note amounting to $35,000, besides interest; and whereas, it is the desire of all of the parties concerned to secure a release of the said D. H. Trent vendor's lien note and it is also the desire of the parties to extend the payment of the unpaid notes so executed by J. L. Tuckness to Geo. S. Berry and T. J. Coggin:

"Now, in consideration of the premises, it is agreed between the said Geo. S. Berry and T. J. Coggin, of the first part, and the said J. A. White, of the second part, as follows: The said Geo. S. Berry and T. J. Coggin will at once procure a proper release releasing all of said land from the D. H. Trent vendor's lien. The last seven of the ten notes of $157.50 each shall all mature on June 1, 1914, and shall bear interest at the rate of 9 per cent. per annum, from January 1, 1909, interest payable on December 1st of each year, with the exception of the last installment of interest, which shall be payable June 1, 1914, and a failure to pay any installment of interest upon the said seven notes, or any of them, shall at the option of the holder thereof, mature all of said notes, and the vendor's lien securing the said seven notes shall continue as to secure the said notes, with the time of maturity so changed and with the interest so changed to 9 per cent. per annum, and the vendor's lien securing said notes shall be a first lien on the said land and any other unpaid notes executed for the payment of said land by said J. E. Tuckness to said Geo. S. Berry and T. J. Coggin shall constitute a second lien, and shall be subject to the lien securing the last seven notes, the maturity and interest rate of which is hereby changed. Executed this 1st day of June, 1909.

"[Signed] J. A. White.
"Mrs. J. A. White.
"Geo. S. Berry.
"T. J. Coggin.
"Witnesses:
"T. S. Wallace."

This agreement was duly acknowledged and recorded on the 30th day of September, 1909. Tuckness conveyed the 6 acres of land in controversy to plaintiff in error on the 3d day of August, 1906, for a cash consideration of $90, and the deed was recorded in 1907. The deed made no mention of the outstanding notes or the lien. Tuckness conveyed all of lot 30 to White, except the 6 acres on April 10, 1909, reciting a cash consideration paid and the assumption of the payment of the Tuckness notes, including the notes sued on. The first portion of the assignment, stating that the judgment was contrary to law, because the undisputed facts show that the lien on the 6 acres had been waived, and that the plaintiff had no lien thereon would be too general a statement to be considered, but taken in connection with the next succeeding statement, "because the undisputed facts show that the superior title originally vested in Berry & Coggin in so far as this 6 acres is concerned, was lost by reason of a change and substitution of the vendor's lien

obligation," points out, as we take it, the contract between White and Berry & Coggin, above quoted, as being the instrument by which the superior title is alleged to have been lost to plaintiff in error, and also as being the "subsequent transaction between the parties" referred to in the last sentence of the assignment, as there is no other transaction between the parties shown in the record that could possibly be construed as even remotely bearing upon the question of a waiver of the right of the vendors or their assigns to rescind the contract of the sale of the 6 acres.

[1] The question then is presented: Did the fact of the extension of payment by the contract between white and Berry & Coggin, above set out, made subsequent to the conveyance of the 6 acres by Tuckness to plaintiff in error, have the effect to destroy the right of Berry & Coggin to rescind the executory contract for the sale of the 6 acres? We believe that question is answered in the negative in the case of Lanier v. Foust et al., 81 Tex. 186, 16 S. W. 994, by the Supreme Court. True, in the instant case, there had been no default on the notes at the date of the extension contract, but we do not think that a default is necessary to an application here of the principle there stated. The White and Berry & Coggin contract, complained of in the assignment, increased the rate of interest on the notes from 8 to 9 per cent. Did that fact destroy their right to rescind as to the 6 acres? If it had the effect to destroy the lien and the right of foreclosure, it still might not have destroyed the right to abandon the contract of sale, and rescission for nonpayment. Plaintiff in error, not being maker, indorser, or surety on the notes, was not personally liable thereon. It would seem inequitable not to pay or offer to pay for the land, remain in possession, and by reason of the contract, to which it was not a party, claim that the owner of the superior title could neither recover the land nor the purchase price. There is nothing in the contract to indicate that Berry & Coggin intended by the contract to waive the lien, but the contract, by its terms, carried the lien forward to the new date for payment. The assignment does not point out any special feature or provision of the contract, which it is claimed would have the effect to waive the lien or destroy the superior title in plaintiff in error or in another, and we are of the opinion that the contract does not have the effect to do either. If the contract destroyed the right of foreclosure, plaintiff in error could not now ask that a foreclosure be had. A waiver of the lien and right of foreclosure does not necessarily destroy the superior title in the vendor and his right to recover the property.

[2] The assignment does not complain of the failure of the judgment to order the sale of the 144 acres first. It is directed solely to the proposition that the right to rescind

and the lien as to the 6 acres were lost by reason of the extension contract between White and Berry & Coggin. There being no assignment upon this phase of the case, we cannot reverse the judgment, granting a rescission rather than a foreclosure, with direction that the 144 acres be first sold.

Finding no error, the judgment is affirmed.

### On Rehearing.

In plaintiff in error's motion for a rehearing our attention is called to an error in our statement that, "in the instant case, there had been no default on the notes at the date of the extension contract." An examination of the record shows that notes 1, 2, and 3 were then past due, and we make this correction so as to conform to the facts.

With this correction made, the motion in other respects is overruled.

---

⬤⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Application for writ of error pending in Supreme Court.